
Eastern District of Kentucky
F I L E D
JAN 1 1 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 18-79-HRW

DANIEL J. CAREY II, D.C., *et al.*,                                         PLAINTIFFS,


v.                     **MEMORANDUM OPINION AND ORDER**


CSX TRANSPORTATION, INC., *et al.*,                                     DEFENDANTS.


This matter is before the Court on its own motion based on the Court's inherent power and duty to insure the requirements for subject matter jurisdiction are satisfied in all cases.

Notice of Removal [Docket No. 1] in the above-styled action states that this Court may exercise subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332. Upon review of the Notice, this Court found that a serious question existed as to whether it may properly exercise jurisdiction over this matter. Specifically, in setting forth the basis for removal, Defendants maintain that certain Defendants have been fraudulently joined as parties so as to defeat federal jurisdiction. This Court directed the parties to submit briefs in this regard. Having reviewed the parties' submissions, the Court finds that Defendants have not met the stringent requirements for establishing fraudulent joinder, and, as such, remand is warranted.

I.

Plaintiffs, Daniel J. Carey II and Shannon M. Johnson, are duly licensed chiropractors who frequently see and treat patients suffering from various ailments and working in various local industries, including the railroad industry.

In mid-2017, Defendants began investigating Drs. Carey and Johnson, contending that they had conspired with their railroad patients to falsify medical records for the purpose of fraudulently obtaining health benefits.

On July 14, 2017 CSX chief medical officer, Dr. Craig Heligman, sent the first of a series of letters to the U.S. Railroad Retirement Board (RRB), private health insurance provides, and the Kentucky and Ohio chiropractic licensing boards stating that Plaintiffs had engaged in excessive, inappropriate, and fraudulent treatment practices (collectively, the "Heligman Letters").

Defendants also charged CSX employees who were treated by Plaintiffs during a certain time period with having engaged in dishonesty and fraud. Pursuant to the relevant labor agreements between the company and the respective unions, a series of internal disciplinary hearings were subsequently held. During these hearings, certain Defendants republished the Heligman Letters in pursuing charges of dishonesty and fraud against various CSX employees based on these statements. The charged individuals were ultimately dismissed from employment.

Daniel J. Carey II, D.C.; Carey Chiropractic and Rehabilitation, Inc.; and Shannon M. Johnson, D.C., d/b/a Johnson Chiropractic (collectively, "Plaintiffs") filed this civil action against CSX, Dr. Heligman and various CSX employees in Greenup County Circuit Court in the case styled *Daniel J. Carey II, D.C.; Carey Chiropractic and Rehabilitation, Inc.; and Shannon M. Johnson, D.C., d/b/a Johnson Chiropractic Case v. CSX Transportation, Inc.; CSX Corporation; Craig Heligman, M.D.; Gus Thoele; Curt Shogren;, Milton Storm; Dillon Doug Jones; Tom DeAngelo; Shawn Lusk; Elizabeth Creedon; and Kenneth Ray Emerson* No. 18-CI- 00348.

In their Complaint, Plaintiffs allege that the Defendants published known false and defamatory information about Plaintiffs, and that Defendants CSXT, CSX Corp. and Heligman, tortiously interfered with Plaintiffs' business activities.

Defendants filed their Notice of Removal under 28 U.S.C. §§ 1332 and 1441 based. 28 U.S.C. § 1332 requires that the parties be citizens of different states and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). In order for this Court to have diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity, in other words, no defendant may have the same citizenship as the plaintiff. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005).

The parties appear to have no quarrel as to the requisite amount in controversy, agreeing that it exceeds the jurisdictional minimum. As for diversity of citizenship, however, on the face of the Complaint, complete diversity does not exist. Plaintiffs are citizens of Kentucky and/or Ohio. [Complaint, Docket No. 1-1, ¶¶ 1-3]. Defendants CSXT and CSX Corp. are incorporated in Virginia and have their principal places of business in Florida. *Id.* ¶¶ 4 and 5. Defendant Heligman, the Chief Medical Officer for CSXT, is a citizen and resident of Florida. *Id.* ¶ 6. Defendant Thoele is a citizen and resident of Georgia. *Id.* ¶ 7. Defendant Shogren is a citizen and resident of West Virginia. *Id.* ¶ 8. Defendant DeAngelo is a citizen and resident of West Virginia. *Id.* ¶ 11. Complete diversity exists between Plaintiffs and these Defendants.

However, the remaining Defendants are not diverse from Plaintiffs. Defendants Storm, Jones, Lusk, Creedon and Emerson are citizens and resident of Kentucky and/or Ohio. *Id.* ¶¶ 9, 10, 12, 13 and 14. Defendants argue that these Defendants have been fraudulently joined

and, as such, their citizenship of these non-diverse parties should be disregarded for the purposes of determining diversity under 28 U.S.C. § 1332.

## II.

Fraudulent joinder is a "judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). This doctrine is used by courts "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).

This doctrine was created to prevent plaintiffs from asserting claims against nondiverse defendants "for the sole purpose of preventing removal." *McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956). If the Plaintiff's claim has no hope of success, then the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Housing Com'n*, 579 F.3d at 624 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)).

The removing party bears the burden of proving fraudulent joinder and must present "sufficient evidence that a plaintiff could not have established a cause of action against [the] non-diverse defendants under state law." *Coyne, 183 F.3d at 493*. To resolve a claim of fraudulent joinder, the district court may "pierce the pleadings" to consider extrinsic, summary judgment-like evidence, such as affidavits and depositions.[1] *Walker v. Philip Morris USA, Inc.*,

---

[1] The piercing of the pleadings presents somewhat of a sticky wicket. "Despite this ancient maxim that courts may not act without jurisdiction, the fraudulent-joinder inquiry

4

43 Fed.Appx. 946, 954 (6th Cir. 2011). However, the standard for evaluating such evidence is quite different from a Rule 56 inquiry, rather, it is "similar to, but more lenient than" a Rule 12(b)(6) analysis motion. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

The Court resolves all disputed questions of fact in favor of the non-removing party. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). If the claims alleged against the allegedly fraudulently joined Defendants have "even a glimmer of hope, there is no fraudulent joinder." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 595 (E.D. Ky. 2011).

### III.

To establish fraudulent joinder and avoid remand, Defendants must establish that there is no colorable basis for predicting that Plaintiffs will be able to recover against Defendants Storm, Jones, Lusk, Creedon, Emerson. A "quick peek" at the record reveals that a "glimmer of hope," albeit faint, exists as to their claims of defamation against these Defendants.

Under Kentucky law, the requisite elements for a defamation claim are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; ( c ) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281–82 (Ky. 2015). Defenses to defamation include privilege and the single publication rule. *Smith v. Martin*, 331 S.W.3d 637,

---

requires them to do just that." *Id.* It "runs contrary to bedrock principles" to allow a federal court to exercise "a little bit of jurisdiction —enough for a quick peek at the merits of a claim, but no more." *Id.* Even more intriguing is that this judicial doctrine "requires courts to examine the merits of claims over which everyone agrees the court lacks jurisdiction." *Id.*

5

640 (Ky. Ct. App. 2011) and *Mitan v. Davis*, 243 F. Supp.2d.719 (W.D. Ky. 2003).

Defendants argue that neither the Hearing Officer Defendants, Defendants Storm, Thoele, DeAngelo and Creedon or Charging Officers Defendants, Defendants Shrogren, Emerson, Jones and Lusk ( collectively"Officer Defendants")[2] can be liable for defamation and, therefore, are fraudulently joined.

The Complaint alleges that: (1) the Charging Officers and Hearing Officers "offered" or "received" the allegedly defamatory Charge Letters and Heligman Letters to the RRB into evidence; and (2) the Hearing Officers additionally "questioned and elicited testimony of Dr. Heligman about the purported fraudulent acts of Plaintiffs and the employees." [Docket No. 1-1, ¶¶ 31, 32].

### A. The statements are defamatory, not merely opinion.

In urging that the Officer Defendants be cut loose, so to speak, Defendants do not contend that the Officer Defendants' conduct during the hearings would be absolved if the remarks are determined to be defamatory. Rather, they maintain that the allegedly defamatory remarks are statements of opinion are, thus, non-actionable.

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). AS Justice Brennan explained in *Milkovich v. Lorain Journal Co.*, merely qualifying an otherwise

---

[2] A Hearing Officer presided over each hearing, gathering evidence by questioning witnesses, including Dr. Heligman and the employees, and reviewing and accepting exhibits into evidence. A Charging Officer is a CSXT employee who testified regarding his knowledge of the facts that served the basis for the charges against each employee. After each hearing, the Hearing Officer reviewed the evidence and provides his opinion.

6

defamatory statement with the words, "in my opinion," is insufficient to escape liability. Using the hypothetical statement, "in my opinion Jones is a liar," he wrote, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S. Ct. 2695, 2706 (1990).

The defamatory statements, initially contained in the three Heligman Letters, do not read as statements of "pure opinion." In his initial letter dated July 14, 2017, Dr. Heligman states that it is his "professional medical opinion" that Plaintiffs "continued to keep employees off work for much longer than is medically appropriate." [Docket No. 8-3]. He further stated that the medical conditions of the patient-employees "would generally resolve without any treatment, without more than a few weeks away from work, or with no more than a couple weeks of chiropractic care." *Id.* Based on these assertions, Dr. Heligman concluded that Plaintiffs' "practices are also highly suspicious for excessive and inappropriate treatment" and "highly suspicious and suggestive of fraudulent practices." *Id.* The basis for Dr. Heligman's allegations of excessive treatment and fraud were based on nothing more than his own unsupported conclusions. Dr. Heligman never evaluated the respective employees, never requested that they be examined by another doctor, never reviewed their medical records, and never spoke with either Plaintiff.

The relevant inquiry as recognized by both the United States Supreme Court and the Kentucky Court of Appeals is whether the statements are provable as false. In this case, there is certainly a chance that these statements will be proven false. This possibility is all that is needed for the fraudulent joinder analysis.

7

### B. The statements are not protected by privilege.

Defendants next urge that privilege shield the Officer Defendants from liability. They argue that even if the statements are found to be defamatory, the Officer Defendants still cannot be liable because the statements were published / re-published in the context of an employment relationship and made to individuals with a corresponding interest and were therefore privileged.

Notably, however, this intra-corporate immunity has not been applied in a defamation context in Kentucky. *See Biber v. Duplicator Sales & Serv.*, 155 S.W.3d 732, 737 (Ky. Ct. App. 2004) ("we disagree with the circuit court that intra corporate communications are absolutely privileged"). Moreover, neither Plaintiff is, or was, employed by CSX ; nor did they have any direct involvement with the employment of their patients. As such, the notion of privilege is misplaced.

### C. The single publication rule does not apply.

Finally, in a "hail Mary" fashion, Defendants contend that the single publication rule bars any action for defamation against the officers.

Under the single publication rule, "any form of mass communication or aggregate publication -- such as the publication of an edition of a book or a periodical, or the broadcast of a single radio or television program -- is a single communication and can give rise to only one action for [defamation]." *Davis v. Mitan (In re Davis)*, 347 B.R. 607, 611 (W.D. Ky. 2006) (*citing Restatement (Second) of Torts* § 557A (1977)). While Kentucky has not expressly adopted the single publication rule, those courts considering this issue have recognized that the veritable foundation of the doctrine is predicated on the publication of a defamatory statement in some

8

form of "mass communication." *See Mitan v. Davis*, 243 F. Supp. 2d 719, 721-22 (W.D. Ky. 2003) (discussing the promulgation of the single publication rule in the advent of mass publication). Irrespective of whether the Kentucky Supreme Court would adopt the single publication rule, there exists no decision where the single publication rule has been applied to a situation analogous to the present action, nor have Defendants offered any such authority. Additionally, as discussed in relevant court decisions, the single publication rule has generally been applied in determining whether subsequent publications of defamatory statements reset the statute of limitations. *See e.g. Mitan*, 243 F. Supp. 2d at 722. Again, Defendants have not presented of any decision from a Kentucky or Sixth Circuit court applying the rule to exclude a tortfeasor from liability on grounds other than the statute of limitations.

Moreover, the single publication rule pertains to defamatory statements published in a book, radio broadcast, television program, the internet, or any other form of mass media. By contrast, "republication" is triggered where a defendant "edits and retransmits the defamatory material, or distributes the defamatory material for a second time with the goal of reaching a new audience." *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 914 (W.D. Ky. 2009). In this case, the introduction of the Heligman letters by the Officers during various CSX employee disciplinary hearings constitutes republication to a new audience. Therefore, the single publication rule does not apply.

### D. Defendants have not carried their burden.

Factual issues abound in this case. However, in its current posture, this case is not before this Court for a fact-based, summary judgment-type inquiry. The "piercing" contemplated by *Walker* is not intended to test the sufficiency of the factual support of Plaintiffs'

9

claims. Indeed, had Defendants not removed the case, the adequacy of Plaintiff's factual support would not be examined until much farther along in the litigation, after discovery. *See Walker*, 43 Fed.Appx. at 956. The issue before this Court is whether Plaintiffs' claim of defamation against the Officer Defendants is so frivolous that it has no hope of success and the court has no choice but to presumes that the Plaintiffs made the claim for the sole purpose of preventing removal and retains jurisdiction. *Murriel-Don Coal Co.*, 970 F. Supp. 2d at 594. In other words, Defendants must establish that there is no "colorable basis for predicting" that these Plaintiffs will be able to recover against the Officer Defendants. If Plaintiffs' claim against these Defendants has even a "glimmer of hope," there is no fraudulent joinder. *Id.* at 597. This is an onerous burden and it is one that the Defendants have failed to carry.

Whether the claims of these Plaintiffs make it to a jury is not the question currently before this Court. Moreover, in determining whether the Officer Defendants have been fraudulently joined, this Court must view the facts as in a light most favorable to them. While faint, there exists a "glimmer" as to liability on their part.

As there was no fraudulent joinder, there is no diversity. Where there is no diversity, there is no subject matter jurisdiction and remand is warranted.

### IV.

"It is well established that the plaintiff is master of [his] complaint and can plead to avoid federal jurisdiction." *Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401 (6th Cir. 2007). However, "plaintiffs should not be able to play games with federal jurisdiction." *Murriel-Don Coal Co.*, 790 F. Supp. 2d at 596. Yet, the Court finds no shenanigans here. Because this Court has found that the nondiverse Plaintiffs Michelsen and Smith were not

10

fraudulently joined by Plaintiffs and their claims should not be severed, the action must be remanded as this Court lacks diversity jurisdiction. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that this matter be **REMANDED** to the Greenup Circuit Court.

1/11/19.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge